FILED

1  Kleopatra Makres

2  24946 Via Denise

3  Laguna Niguel, CA  92677

4  Cell: 949-939-0989

5  Plaintiff, In Pro-Per

2012 SEP 12  AM 11:01

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**SACV 12·01518** CJC(ANx)

KLEOPATRA MAKRES, as

Plaintiff,

vs.

BANK OF AMERICA N.A., a Federally
Chartered Bank; BAC HOME LOANS
SERVICING, LP F/K/A
COUNTRYWIDE HOME LOANS
SERVICING LP, a Delaware
Corporation; HSBC BANK USA, N.A.,
a Federally Chartered Bank;
DEUTSCHE ALT-A SECURITIES
MORTGAGE LOAN TRUST, SERIES
2007-OA4, a New York Corporation;
and DOES 1 THROUGH 10
INCLUSIVE,

Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT FOR VIOLATION
OF FEDERAL LAWS**

1. DECLARATORY RELIEF
   TITLE [28 U.S.C.§§ 2201,2202]
2. NEGLIGENCE
3. QUASI CONTRACT
4. "RESPA" VIOLATION OF
   [12 U.S.C. § 2605]
5. VIOLATION OF TITLE
   [15 U.S.C. §§ 1692 et seq.]
   "F.D.C.P.A"
6. VIOLATION OF CALIFORNIA
   BUSINESS AND
   PROFESSIONS
   [CODE § 17200, et seq.]
7. ACCOUNTING

**JURY TRIAL DEMANDED**

# **TABLE OF CONTENTS**

**I.** JURISDICTION, VENUE ....................................................... 3

**II.** THE PARTIES.................................................................... 3

**III.** GENERAL FACTUAL ALLEGATIONS .......................... 5

**IV.** INTRODUCTION................................................................ 6

**V.**MERS ROLE IN THE SECURITIZATION AND

    ITS' EFFECT ON THE CHAIN OF TITLE............................... 14

**VI.**THE FABRICATED ASSIGNMENT

     IS A FRAUDULENT LIEN.................................................. 16

**VII**: PLAINTIFF'S LOAN MODIFICATION

     AND DEBT VALIDATION EFFORTS............................. 20

**VIII**: PLAINTIFF HAS SUFFERED........................................ 23

FIRST CAUSE OF ACTION-DECLARATORY RELIEF......................... 25

SECOND CAUSE OF ACTION-NEGLIGENCE.......................... 27

THIRD CAUSE OF ACTION-QUASI CONTRACT................................. 28

FOURTH CAUSE OF ACTION................................................ 29

FIFTH CAUSE OF ACTION.................................................... 31

SIXTH CAUSE OF ACTION.................................................... 32

SEVENTH CAUSE OF ACTION............................................... 34

PRAYER FOR RELIEF............................................................. 35

DEMAND FOR A JURY TRIAL................................................ 37

LIST OF EXHIBITS................................................................. 38

VERIFICATION AND ACKNOWLEDGEMENT................................... 39-40

# I. JURISDICTION AND VENUE

1. This Court has original jurisdiction over the claims in this action based on Title [28 U.S.C. §§ 1331, 1343, 2201, 2202], [Title 12 U.S.C § 2605], Title [15 U.S.C. § 1692] Title [42 U.S.C. § 1983] which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[1]

2. This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to [Title 28 U.S.C. § 1367].

3. This Court has original jurisdiction over the claims in this action based on [Title 28 U.S.C. § 1332] which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

4. The unlawful conduct, illegal practices, and acts complained of and alleged in this complaint were all committed in the Central District of California and involved real property located in the Central District of California. Therefore, venue properly lies in this District, pursuant to [Title 28 U.S.C. § 1391(b)].

# II. THE PARTIES

5. PLAINTIFF, Kleopatra Makres, at all times herein relevant to the complaint is the owner of real property commonly known as 24946 Via Denise, Laguna Niguel, CA 92677. ("The plaintiff")

///

///

---

[1] The Ninth Circuit instructs that in actions brought under 28 U.S.C. § 2201, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). The *Brillhart* factors require the Court to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; *see also Schafer v. Citimortgage* No. CV 11-03919, 2011 WL 2437267 (C.D. Cal. June 15, 2011). As held by the court *Schafer*, this action does not involve a needless determination of state law issues, does not involve forum for shopping, and is not duplicative litigation.

6. DEFENDANT, BANK OF AMERICA N.A. (BofA), a Federally Chartered Bank; a Delaware Corporation doing business in California as a member of the National Association of Banks *("Debt Collector & alleged Creditor of the alleged debt")*

7. DEFENDANT, BAC HOME LOANS SERVICING LP, F/K/A COUNTRYWIDE HOME LOANS SERVICING LP, (BAC), a subsidiary of (Bank of America N.A.), as the initial alleged servicer of the alleged debt and the alleged creditor. *("Master Servicer")*, *("Debt Collector & alleged Creditor of the alleged debt")*.

8. DEFENDANT, HSBC BANK USA, NATIONAL ASSOCIATION (HSBC), the Trustee of the CHL Mortgage Pass-Through Trust and the Master Servicer and Custodian of the records of the Trust. *("Trustee")*, *("Custodian")*, and *("Debt Collector and alleged beneficiary")*.

9. DEFENDANT, DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2007-OA4, a dissolved and terminated entity *(the "Trust Fund")*, the issuer of the stock certificates in exchange for the Notes *("Issuing Entity, alleged beneficiary of the alleged debt")*.

10. DOES 1 THROUGH 10 INCLUSIVE, plaintiff does not know the true names and nature of defendants DOES 1 THROUGH 10 INCLUSIVE, and will amend the complaint when their true identities have been ascertained according to proof at trial.

11. Whenever reference is made in this complaint to any act of any defendant(s), that allegation shall mean that such defendant acted individually and jointly with the other defendants.

12. Any allegation about acts of any corporate or other business means that the corporation or other business did the acts alleged through officers, directors, employees, agents and /or representatives while they were acting within the actual or ostensible scope of their authority.

13.  At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or commit the acts alleged in this complaint. Additionally, some or all of the defendants acted as the agent of the other defendants, and all of the defendants acted within the scope of their agency if acting as an agent of the other.

14.  At all relevant times, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this complaint.  Knowing or realizing that the other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts.  Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

## III: GENERAL FACTUAL ALLEGATIONS

15.  The plaintiff is informed and believes and alleges thereon that defendants are third party strangers to her alleged debt and mortgage and have no ownership interest entitling them to collect payment or declare a default.  The defendants have been engaged in an elaborate business practice to deceive, misrepresent and have schemed to commit fraud and other acts of fraud against the plaintiff in order to collect on alleged debts, defendants have resorted to "papering the file" by fabricating and filing an "Assignment of Deed of Trust" (Exhibit A), employing individuals who have no authority or personal knowledge of the facts to which they attest, and falsely representing to plaintiff and the court that they have the right to take the plaintiff real property away.  Not only is defendants' conduct a *criminal violation* of California's Mortgage Fraud Statute, Cal. Penal Code section 532(f)(a)(4)[2], and an affront to long-standing property laws, but their reliance on

---

[2]  Cal. Penal Code section 532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following...(4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

fabricated and forged documents undermines the integrity of the judicial system. Through this action, plaintiff seeks to stop defendants fraudulent practices, discover the true holder in due course of the alleged debt evidenced by the "Promissory Note", and determine the status of defendants' claims.

## IV. INTRODUCTION

16. During the time the high times of the mortgage refinancing and mortgage origination era 2002-2007 Countrywide Financial became the biggest lender in the United States.

17. Countrywide Financial was very unique as it was the only entity that could originate, securitize, service, collect and obtain investors for its products. This ability was enhanced by the fact that major players on Wall Street were assisting the financial giant with its core mission of acquiring the most number of mortgages in the shortest time possible in order to place them with the investment community as instruments that were rated as AAA and desired by investors around the world. These mortgages were bundled into "Mortgage Backed Securities" through a process known as "Securitization". These "Securities" were then sold to investors in the form of certificates, whereby the investors became the "Certificateholders" of the securities that were to be fed by the toxic loans.

18. As the Wall Street entities rushed to "Securitize" the toxic loans and their anticipation of the massive number of defaults that were to come in the form of toxic assets, they also placed bets accordingly and bought exotic insurance products in the form of Credit Default Swaps[3]. The eventual meltdown of the market provided Wall Street with even more ridiculous profits.

---

[3] In 1995, JPMorgan credit the Credit Debt Swap (CDS). Essentially, a CDS is a form of insurance intended to protect the buyer of the policy in the case the borrower defaults on the loan. If the borrower defaults, the buyer of the CDS receives a large payout for the cash value of the defaulted loan. The main difference between traditional insurance policy and a CDS is that anyone can purchase a CDS, even those who have no direct "insurable interest" in the lender. CDSs' were instrumental during the housing bubble because once the banks ran out of creditworthy borrowers; they had to turn to un-creditworthy "subprime" borrowers. To avoid losses from defaults, the banks moved these risky mortgages off their books by bundling them into "securities" and selling them to investors. To induce investors to buy, these securities, the securities were then "insured" with credit default swaps. CDSs' allowed investors to bet

19. As Wall Street that includes our defendants rushed to "Securitize" these loans they forgot their own rules and written compliance documents that are required to be followed by the letter of the law. Wall Street created a situation by which the "Mortgage Backed Securities" that were supposed to be backed by mortgages were actually not secured by anything except the number of dollars associated with the alleged transactions. These transactions were only reflected on the ledger books. Under the standard model for securitization the "Notes" were *supposed* to be sold and transferred into a trust pool "Securitized Trust" that holds the promissory notes as collateral on the securities bought by investors ("Certificateholders"). These "true sales" allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against defaults as required by the Federal Reserve. The purpose of securitizing collateral debt obligations was to provide a large supply of money for the lenders for originating loans, and to provide investments to bond holders - which were expected to be relatively safe.

20. The formation of a proper and compliant Securitized Trust requires that the Trust to be Governed by (1) the Pooling and Servicing Agreement; (2) the Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York, depending on its origin, and (5) Internal Revenue Code section 860a through 860G better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

///

///

---

against the average American to default on their mortgage with little risk. CDS insurance was especially attractive to investors who had knowledge of the subprime mortgage industry, since they knew the likelihood of default on those loans was much higher. Notably, AIG Insurance Company ("AIG"), an insurance carrier who owned a considerable market share of these CDS policies, was unable to make good on these policies after the housing bubble burst resulting in AIG seeking a government bailout. *See* Justin Fox, *Why the Government Wouldn't Let AIG Fail?* TIME Business (September 16, 2008) http://www.time.com/time/business/article/0,8599,1841699,00.html. Thus, in the end, it was the American taxpayer who bore the burden of these CDS.

21. One of the most essential aspects of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering. This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in the case of default. In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process - the promissory note and the security instrument (Deed of Trust or Mortgage Note). In this case, on information and belief, neither document was validly transferred within the required timelines as stipulated by the pooling and servicing agreement.

22. Here, plaintiff alleges that the "true sale" never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instruments "FAS140" and thereby, defendants BAC Home Loans Servicing LP, Bank of America and HSBC did not acquire any legal, equitable, and pecuniary interest in the plaintiff's Note and Mortgage. As a result, thereof, HSBC, BAC, and BofA which purports to be the plaintiffs' creditor, actually have no secured or unsecured right, title, or interest in the plaintiffs Note and Mortgage, and have no right to collect mortgage payments, demand mortgage payments, or report derogatorily against the plaintiff's credit[4], or to default the plaintiff.

23. The plaintiff further allege that, on information and belief, the "Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA4" ("hereinafter the DBALT 2007-OA4") that purportedly owns the plaintiffs' Note and Mortgage

---

[4] Plaintiff's allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *U.S. Bank vs. Ibanez*, SJC-10694, 2011 WL 38071. In *Ibanez*, the court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of the mortgages. The court rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage.

has been dissolved and terminated due to the disbursement and receipt of mortgage insurance payouts to BAC and the certificateholders (including, but not limited to, Credit Default Swaps and other mortgage insurance products)(See Exhibit B). As a result of these mortgage insurance payouts, BAC Home Loans Servicing LP and all other defendants and Doe Defendants have been paid in full on plaintiff's debt obligation; In fact Countrywide Home Loans was paid off shortly after the closing documents were signed and recorded, hence no debt could be assigned or designated to any other parties as claimed by the defendants.

24. Despite the procedural requirements and the rules governing the proper accounting procedures "FAS140" and Federal and State laws overseeing the compliance of such transactions, the defendants attempt to take advantage of the complex structured financial system to defraud the plaintiffs as they have done with millions of other homeowners from the inception of the meltdown. Plaintiff anticipates that the defendants and their counsel will seek a Court-Sanctioned bailout by submitting a blatantly fabricated "Assignment" via a Request for Judicial Notice, thereby committing fraud on the Court, and attempting to further mislead plaintiff that the defendants BAC, Bank of America and HSBC are actual creditors, and are entitled to enforce their alleged obligation.

25. The plaintiff does not dispute that she owes an amount on her alleged mortgage obligation[5]. Rather, plaintiff disputes the (character, amount, and the legal status), and seeks the Court's assistance in determining who the holder in due course is of her alleged Note and alleged Deed of Trust, and specifically what rights, if any, the defendants have to claim a secured or unsecured interest in the plaintiff's alleged Note or alleged Mortgage.

---

[5] However, simply because plaintiff does not dispute this fact, the Court should not condone BAC, BofA, MERS, and RECONTRUST fraudulent behavior and predatory mortgage collection practices and allow it to collect on money it was not owed. Simply put, the court should not allow the defendants to trample over 200 years of well-settled property laws just because the "owes somebody money."

26. The plaintiff is informed and alleges that the defendants are not true beneficial parties in interest in the alleged debt and alleged mortgage. The defendants have assumed the alleged debts from the former leader in the mortgage business Countrywide Financial Corporation through a "Credit Sale" utilizing their credit as collateral[6]. The defendants are debt collectors under the meaning of "Debt Collector" as stipulated by the "F.D.C.P.A 15 U.S.C. § 1692 (a)(6)"; the defendants are not the originators of the alleged debt and did not service the debt as the originators of the alleged debt; the defendants also fall within the meaning the "F.D.C.P.A" collecting alleged debts at the time that the alleged debts were in default.

27. On or about May 03, 2007, plaintiff executed a promissory note ("Note") in favor of Countrywide Bank, FSB, (hereinafter "Countrywide Bank") obtaining an alleged loan on the property located at 24946 Via Denise, Laguna Niguel, CA 92677; MERS was named on the Deed of Trust as the purported "nominee" and "beneficiary" of the Deed of Trust (See Exhibit C).

28. The plaintiff is informed and alleges that the alleged lender "Countrywide Bank" did not tender the funds needed for the loan at the time the loan was approved and funded. The party that provided the fractional funds[7] (Lending Credit[8]) for the deal was the "Depositor" ("ACE Securities Corp.").

29. The plaintiff is informed and alleges that Countrywide Bank never sold, transferred , or granted their Note or Mortgage to the sponsor, depositor, BAC, or

---

[6] "It has been settled beyond controversy that a national bank, under Federal Law, being limited in its power and capacity, cannot lend its credit by nor guarantee the debt of another. All such contracts being entered into by its officers are ultra vires and not binding upon the corporation." It is unlawful for banks to loan their deposits

[7] Fractional banking is term used when the alleged Banks place 5% of their funds into the actual; funding of the total loan and the remaining funds are provided by the Federal Reserve Bank through crediting the borrowers account; "There is no doubt but what the law is that a national bank cannot lend its credit or become an accommodation endorser"

[8] "A bank is not the holder in due course upon merely crediting the depositors account." *Bankers Trust v. Nagler*, 23 A.D.2d 645, 257 N.Y.S.2d 298 (1965).

BofA, and that BAC, BofA, are merely a third - party stranger to the alleged debt "the loan" transaction.  Furthermore, plaintiff alleges that none of the defendants or Doe defendants can demonstrate or document that plaintiffs' Note was ever endorsed, and transferred to BAC or BofA prior to the closing and termination of the alleged Trust.  In fact, plaintiff has requested multiple times for the defendants BAC, BofA to verify and validate her debt.  Although this information should be readily available to any mortgage servicer, BAC and BofA have failed to provide any evidence to verify the owner and amount of the plaintiff's mortgage or validate the claim to the plaintiffs' debt obligation.

30.  The plaintiff alleges that the parties involved in the alleged securitization and alleged transfer of the plaintiffs' Note and Mortgage failed to adhere to section 2.01 of the PSA, which requires that plaintiffs' Note and Mortgage be properly endorsed, transferred, accepted, and deposited with the Securitized Trust (or its custodian) on or before the "closing date" indicated on the Prospectus 424B5 (See Exhibit D); the "closing date" is the date by which all the Notes and Mortgages must be transferred into the "Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA4".  The failure to so results in the Note and Mortgage not being part the "DBALT 2007-OA4", such that it is not a loan that either BofA or BAC can attempt to collect on.

31.  On or about August 24, 2011, "Tina LeRaybaud", purportedly the alleged "Assistant Secretary" for MERS, allegedly executed a document purporting to be a "Assignment of the Deed of Trust" ("Assignment"), in which she intentionally misrepresented to the plaintiff in writing that defendant BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP (hereinafter, referred to BAC) has acquired the interest in the plaintiffs' Note and Mortgage, and that MERS had endorsed, transferred, and negotiated the plaintiffs' Note to defendant BAC **"For Valuable Consideration"**. In fact, no such transfer of interest took place, a fact that "Tina LeRaybaud",

BofA and BAC, were aware of (See Exhibit A), attached hereto is a true and correct copy of the "Assignment", executed on August 24, 2011. <u>Plaintiff specifically disputes the contents and the authenticity of this document.</u>

32. The plaintiff alleges that the "Assignment" or "Assignments" that was/were executed after the closing date of the trust; The dubious "Assignment(s)" raises numerous red flags and further demonstrates that the plaintiffs' Note and Mortgage were not deposited into the Trust by the closing date, and that the "Assignment(s)" was/were fabricated in attempt to "paper over" the fatal securitization defects.

33. The failure to deposit plaintiffs' Note into the "DBALT 2007-OA4" before the closing date is a violation of the PSA and New York Trust Law. Consequently, the "DBALT 2007-OA4" trust cannot claim any legal or equitable right, title, or interest in the plaintiffs' Note and Mortgage since Bank of America (BofA) cannot take any action which is not authorized by the Securitization agreements that created and govern the "DBALT 2007-OA4".

34. The plaintiff does not allege or assert that she is a beneficiary or party to the PSA. Rather, plaintiff alleges that the failure to securitize her Note makes it impossible for B of A, "DBALT 2007-OA4", and/or B of A to claim, allege or assert that it was assigned, transferred or granted plaintiffs' Note or Mortgage, or any interest therein, in any manner whatsoever. Plaintiff also alleges that the failure to securitize her Note and Mortgage has resulted in an unperfected lien that defendants cannot enforce in any manner whatsoever[9].

---

[9] These allegations are identical to those brought by the Nevada Attorney General against Bank of America, BAC Home Loan Servicing, and Recontrust, in which Attorney General Catherine Cortez Masto alleges that these entities engaged in unlawful and deceptive practices by misrepresenting to homeowners that they had the authority to foreclose despite the fact that there were fatal deficiencies in transfers to the securitization Trusts. *State of Nevada vs. Bank of America et al.*, No. 3:11-cv-00135-RCJ, (C.D. Nev August 30, 2011). The AG concludes that, "[t]hese are not mere technicalities. The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the Trusts as the holders in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know the actual holders of their mortgages so that, for example, they can investigate and assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note." *Id.* at ¶ 146.

35. The plaintiff relied on BAC and BofA misrepresentation and has been damaged in the following ways: (1) multiple parties may seek to enforce her alleged debt obligation against her;  (2) the title to her home has been clouded and rendered unmarketable (unless more fraudulent actions are taken to show the foreclosure proceedings are proper and legal), as any would-be buyer of the plaintiffs' property will find themselves in legal limbo, unable to know with any certainty whether they can safely buy the plaintiffs property or get title insurance; (3) she has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) she is unable to determine whether she sent her monthly mortgage payments to the right party; (5)  her credit worthiness has been destroyed due to the defendants misreporting of alleged debts without proper standing; (6) she has expended significant funds to cover the cost associated with processes involved and legal fees.

36. In addition to seeking compensatory, consequential, punitive, and other damages, plaintiff seeks Declaratory Relief as to whether the Deed of Trust (Mortgage) secures any, obligation of the plaintiff in favor of defendants BAC, BofA, such that any of them can collect plaintiffs' mortgage payments, demand payment or engage in debt collection activities.

## V: MERS ROLE IN THE SECURITIZATION AND ITS EFFECT ON THE CHAIN OF TITLE TO THE PLAINTIFFS' PROPERTY

37. Mortgage Electronic Registration Systems, Inc. ("MERS") is a private corporation that administrates the MERS system, a national electronic registry system that purports to track the transfer of ownership interests and servicing rights in mortgage loans, including the plaintiffs' "alleged debt" loan.  In 1993, the MERS system was created by several large lenders; eventually other mortgage banking entities became members.  Members subscribe to the MERS system and pay an annual fee for the electronic processing and tracking of ownership and

transfers of mortgages. Members contractually agree to appoint MERS as their common agent on all mortgages they register in the MERS system. In essence, MERS privatized the mortgage recording system, creating a situation where in a borrower can no longer go to the Office of the County Recorder and determine who their lender actually is at any given point in time. Coincidentally, the formation of MERS corresponds with the period of time which the Glass-Steagall Act was enacted to regulate the FDIC and Banking and the repeal of the act in 1999, and the introduction of another bill known as the Gramm-Leach- Bliley Act; the golden age of securitization had started.

38. MERS is listed as grantee in the official records at the County Register of Deeds Offices. The lenders were supposed to retain the interest in the Promissory Notes, as well as the servicing rights to the mortgages, not MERS.

39. The operative document defining MERS and its rights and functions is the Deed of Trust ("Deed of Trust" or "Trust Deed"). The Deed of Trust conveys a security interest and power of sale in the real property "real estate" to the lender only, not MERS[10].

40. The plaintiffs allege that defendant MERS is merely an electronic registration system and not a true beneficiary, and did not grant, assign, or transfer any true or pecuniary beneficial interest in the plaintiffs' Note and Mortgage. Contrary to the recitations contained in the "Assignment(s)" purportedly executed on August 24, 2011, the "Assignment of Deed of Trust" (1) MERS did not receive any value or consideration for the plaintiffs Note and Mortgage, (2) MERS did not "grant, assign, or transfer" any interest in the plaintiffs' Note and Mortgage; and (3) "Tina LeRaybaud" the purported signatory of the purported "Assignment of

---

[10] This Security Instrument secures to the Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the County of Fresno: [legal description of the property] Deed of Trust ¶ R.

1  Deed of Trust" (See Exhibit A), was not the Assistant Secretary for MERS at any
2  time and lacked the requisite corporate and legal authority to effect an actual
3  "Assignment" of the plaintiffs' Note and Mortgage (assuming that MERS had any
4  legal, equitable, or pecuniary interest in the plaintiffs' Note and Mortgage, which
5  the plaintiff asserts and claims it does/did not have.

6      41.  The plaintiff is informed and alleges that MERS's own membership
7  rules directly prohibit the company from ever claiming ownership of any
8  mortgages or negotiable instruments, including the mortgage for the plaintiff[11]
9  (See Exhibit E). In fact, in September 2009 deposition, former President of MERS,
10  R.K. Arnold admitted that MERS does not have a beneficial interest in any
11  mortgage, that it does not loan money, and that it does not suffer a default if a
12  borrower fails to repay a mortgage loan[12]. Therefore, MERS does not own the
13  plaintiffs Note and Mortgage, and did not "grant, assign, or transfer" any interest
14  therein to defendants BAC, Bank of America, or Recontrust Company N.A. or any
15  other Doe defendants at any time.  Furthermore the alleged assignment that has
16  been recorded to BAC on August 24, 2011 could have never actually happened
17  before or there-after.

18      42.  The plaintiff is informed and alleges that the purported "Assignment"
19  of the plaintiffs' Note and Mortgage to BAC is fraudulent lien claim and in direct
20  contravention of the laws and customs of California.[13]

---

[11]  A successor-in-interest to the beneficial interest in the trust Deed may choose to engage MERS as its agent by execution of a subsequent agreement, but MERS and its members cannot force MERS upon all future purchasers simply by claiming such authority in the original deed of trust.

[12]  See Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc,* Civil Action No. CV-08-900805 (Ala. Cir. Sept.25, 2009) available at (http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

[13]  "Whatever 'necessary to comply with law or custom' means, and there is no evidence in the record to explain it, it should not mean that U.S. Bank or MERS' can contract away their obligations to comply with foreclosure statutes." *In re Salazar.* 448 B.R. 814.823 (finding that the MERS system is not an alternative to statutory foreclosure laws, which "must be respected." and affirming that "[t]her court ...joins the courts on other states that have rejected MERS' offer of an alternative to the public recording system.") *Id.* at 824

43. Therefore, based on the foregoing, MERS did not, *in fact*, assign any interest to BAC Home Loan Servicing LP or Bank of America N.A., such that BAC or BofA can demand mortgage payments or report the plaintiff's payments as delinquent or attempt to foreclose on the Property.

## VI: **THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT CONVEYED NO INTEREST TO BAC HOME LOANS SERVICING LP**

44. On August 24, 2011, Bank of America and/or BAC caused the "Assignment of Deed of Trust" to be recorded with the Orange County Recorders' Office. The "Assignment" alleged "**For Value Received**" MERS granted, assigned, and transferred to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans, LP all beneficial interest in the Deed of Trust. The "Assignment of Deed of Trust" was purportedly signed by "Tina LeRaybaud" as the alleged "Assistant Secretary" of MERS. The plaintiff alleges that no such transfer ever occurred and that "Tina LeRaybaud" is not the "Assistant Secretary" of MERS.

45. The plaintiff is informed and alleges that "Tina LeRaybaud" is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.

46. In fact, the alleged "Assignment" was fraudulently executed without MERS's or Countrywide Bank's knowledge or authorization.

47. The alleged secretary for MERS "Tina LeRaybaud" was never, in any manner whatsoever, appointed as the "Assistant Secretary" by the Board of Directors of MERS, as required by MERS's corporate by-laws and adopted corporate resolution by the Board of Directors of MERS. For that reason, the individual acting as the alleged "Assistant Secretary of MERS" never had, nor has, any corporate or legal authority from MERS, or the lender's successors and

assigns, to execute the purported "Assignment."[14]  This was an intentional act undertaken by the defendants BAC, BofA, done knowingly with specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

48.  The "Assignment" is a fraudulent lien claim, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection of the plaintiffs' mortgage payments, as well as engaging in other wrongful debt collection activities.

49.  The plaintiff alleges that any amounts allegedly owed under the Note is subject to equitable offset by the actual, consequential, special, and punitive damages owed to the plaintiff from defendants, which amount is currently unknown, but will be determined upon conducting discovery.  Plaintiff believes that this amount will be in excess of the amount of her alleged obligation.

50.  The defendants' attempts to assign or transfer a Deed of Trust by itself, does not allow enforcement of plaintiffs' Note and Mortgage. As alleged in this complaint herein, plaintiffs' Note and Mortgage were not properly negotiated, endorsed, and transferred to defendants BAC Home Loans Servicing LP and/or BofA, who seek to cause its purported authorized agent(s) defendants BofA and/or BAC Home Loans Servicing LP, to collect mortgage payments and engage in other unlawful collection practices.

///

///

---

[14] The instant case is analogous to *Kingman holdings, LLC v. Citimortgage, Inc. and Mortgage Electronic Registration Systems, Inc.,* WL 1883829 ( E.D Tex. 2011)("*Kingman*"), where the court denied a motion to dismiss with similar causes of action as those that are pled here on the basis that the plaintiff had adequately challenged the signatory's alleged title as 'Vice President" of MERS. The *Kingman* court held that the plaintiff had adequately pled that the assignment executed by Nate Blackstun as "Vice President" on behalf of MERS, was void because Blackstun was not actually appointed by MERS to be its Vice President.

51. California Commercial Code section 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an instrument means(a)the holder of the instrument,(b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instruments pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

52. The plaintiff is informed and believes and alleges that none of the defendant's were/are present holders in due course of the plaintiffs' Note such that they can enforce plaintiffs' obligation and demand mortgage payments.

53. The plaintiff is informed and believes and alleges that the defendant's were not, and are not, a nonholder in possession of the plaintiffs' Note who has rights of the holder.

54. If there is a holder due in course of plaintiffs' Note at issue, pursuant to California Commercial Code section 3301, et seq, and/ or the PSA, it is the entity that can establish a pecuniary, legal, and equitable interest in the property, and provide an unbroken chain of title to plaintiffs' Note and Mortgage.[15]

---

[15] The testimony of Linda DeMartini, a 10-year litigation manager for Countrywide, in *In Re Kemp,* Case No. 08-18700-JHW, (Bankr. D. N.J. November 16, 2010)(for publication) exposed the shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect "holder in due course" status. In that case Linda DeMartini described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trusts that had purchased the loans, as required under the pooling and servicing agreement. Ms. DeMartini testified that it was standard practice for Countrywide to warehouse the original mortgage notes, which were stored in Simi Valley, California, despite securitization contracts that required the notes to be physically transferred to sponsors, trustee or custodians of the securitized trusts. The findings in court decisions all over the country, news stories, attorneys generals' complaints, and state and federal investigations reveal that business practices like Countrywide's were common place and, like Countrywide, most lenders failed to properly comply with protocols required to properly securitize

55. On information and belief, none of the defendant's were/are entitled to enforce the plaintiff's Note pursuant to § 3309 or subdivision (d) of § 3418

56. The plaintiff alleges that, prior to demanding mortgage payments from the plaintiff, none of the defendants had, nor presently have, secured or unsecured legal, equitable, or pecuniary interest in plaintiffs' Note and/or Deed of Trust as required under California law-irrespective of who is actually in physical possession of plaintiffs' Note.

57. The plaintiff alleges that, on information and belief, Bank of America and BAC Home Loans Servicing LP, and/or its agents are fraudulently enforcing an alleged debt obligation in which they have no pecuniary, equitable or legal interest. Thus, the defendants Bank of America and/or BAC Home Loans Servicing LP conduct is part of a fraudulent debt collection scheme.

## VII: PLAINTIFF'S LOAN MODIFICATION AND DEBT VALIDATION EFFORTS

58. On or about September 2010, plaintiff initiated loan modification negotiation efforts with defendant BofA, plaintiff's purported loan servicer. Plaintiff sent the modification request packet to BofA for review. BofA confirmed the packet was received and in their system.

59. Starting September 2010, through November 2010, plaintiff called a few times a month for a status update. During this time plaintiff was told her loan modification was under review and that BofA needed updated financial information. Plaintiff sent all documents requested by defendant BofA at least 2 times during this time.

---

mortgage loans. Ms. DeMartini's testimony has been corroborated by Abigail Field of CNN, who reviewed foreclosures filed in two New York counties between 2006 and 2010 in which Bank of New York was foreclosing on behalf of a Countrywide securitization trust, and found that none of the 104 loans that were examined were endorsed by Countrywide: " ..If the lack of endorsements on these notes is typical- and 104 out of 104 suggests it is - the problem occurs across Countrywide securities." *See* Abigail Field, *At Bank of America, More Incomplete Mortgage Docs raises More Questions*, Fort., (June 3, 2011). http://finance.fortune.cnn.com/2011/06/03/at-bank-of-america-moreincomplete-mortgage-docs-and-more-questions/.

60. On or about December 2010, plaintiff called for a status update and was told her loan modification was declined due to lack of communication and BofA told her that she needed to re-apply.

61. On or about March 2011, plaintiff, for second time, sent BofA a loan modification packet.

62. On or about January 05, 2012 the plaintiff received a Notice of Default (NOD) from defendant Recontrust Company N.A. (See Exhibit F). Notice also included a "Debt Validation Notice" for plaintiffs alleged loan (Debt); Notice claims that defendant Recontrust Company N.A., acting in its capacity as agent for the beneficiary, pursuant to 1692(G)…(b) The name of the Creditor to whom the debt is owed: Bank of America N.A., (See Exhibit G).

63. On or about February 07, 2012, in an effort to verify and validate her debt plaintiff sent defendants BofA and Recontrust by certified mail a letter with heading "Notice of Dispute; Demand for Validation and Proof of Claim" pursuant to "RESPA" and "FDCPA", in which she requested that BofA and Recontrust provide, among other things, "The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note" (See Exhibits H & H1). Letter also contained a "Notice of Cease and Desist" asking BofA and Recontrust to halt all illegal actions related to the foreclosure of the property as a genuine dispute was presented and issued to the alleged creditor BofA. On or about February 21, 2012 B of A responded with letter acknowledging receipt of request (See Exhibit H2).

64. On or about February 29, 2012 defendant BofA responded to plaintiff's request with a letter stating "Please note that Bank of America N.A. services this loan on behalf of the Owner of the Note" and requested additional time to investigate and obtain the remaining requested items (See Exhibit I).

65. On or about May 9, 2012, the firm (Blank Rome LLP, Counselors at Law) representing defendant Bo A responded to plaintiff's request with a letter

stating "The current owner of the note is Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP, for the Benefit of the DBALT 2007-OA4 Trust" (See Exhibit H3).

66.  On or about March 26, 2012, plaintiff sent a "Demand for Beneficiary Statement Under Mortgage C.C.C. § 2943"; requesting a breakdown of amounts due, this Notice was submitted with the hopes to identify the lawful parties with the legal rights to the alleged debt; this Notice was submitted by certified mail to Bank of America, MERS, Recontrust Company N.A., and HSBC Bank USA N.A., none of the defendants have ever answered the Notice request (See Exhibits J, J1, J2, J3).

67.  On or about March 26, 2012, additional communication was presented to defendant MERS the alleged original beneficiary and alleged Holder of the Deed of Trust/Mortgage putting them on "Notice of Non-Compliance of Non-Judicial Foreclosure by Statute Under C.C.C. § 2941.9, C.C.C. § 2934 (a)(2)(a)(b)(c)(d)" to provide the plaintiff with the documents that would confirm the standing of MERS as the party with the lawful rights to collect on the alleged debt by their alleged "Assignment" this Notice was submitted by certified mail (See Exhibit K).

68.  On March 26, 2012, additional communication was presented to defendant Recontrust Company N.A. as the alleged Trustee of the Deed of Trust/Mortgage putting them on "Notice of Non-Compliance of Non-Judicial Foreclosure by Statute Under C.C.C § 2941.9, C.C.C § 2934 (a)(2)(a)(b)(c)(d)" to provide the plaintiff with the documents that would confirm the standing of Recontrust Company N.A. as the party with the lawful rights to collect on the alleged debt by foreclosing on the property this Notice was submitted by certified mail (See Exhibit L).

///
///

69.  On March 26, 2012, the plaintiff presented another opportunity to defendants as parties claiming to have the lawful and legal standing to foreclose on the property to present facts to the plaintiff as to their role in the foreclosure of the property by submitting a "Notice of Capacity, C.C.C. Under Mortgage" the Notice questioned the defendants alleging to have standing to disclose whether their role is "(A) bona fide lender (B) a loan servicer (C) a debt collector (D) or if the defendants have any beneficial interest in the said Deed of Trust/Mortgage. This Notice was submitted by certified mail to Bank of America, Recontrust Company N.A., MERS, and HSBC Bank USA N.A.; none of the defendants have ever answered the Notice (See Exhibits M, M1, M2, and M3).

70.  On multiple occasions as previously stated BofA, BAC, MERS, Recontrust, and HSBC Bank USA, N.A., have not responded to plaintiffs' request. However, Bank of America and all other defendants have yet to send the items requested, and the plaintiffs' inquiries are still unanswered.

## VIII: PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL, AND EQUITABLE DAMAGES

71.  The conduct described above by Bank of America, BAC, and Recontrust Company N.A., and HSBC Bank USA N.A.; is/was malicious because defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, said defendants continued to demand and collect plaintiff's mortgage payments.

72.  The defendants engaged and are engaging in a pattern of defrauding the plaintiff, in that, on information and belief, during the entire life of the mortgage loan, defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees.

73.  On information and belief, at all times material, BofA and BAC had and have knowledge that plaintiffs' accounts were not accurate, but that plaintiff

would continue to make further payments based on defendants' inaccurate accounts.

74. On information and belief, plaintiff made payments based on the improper, inaccurate, and fraudulent rep-presentations as to plaintiffs' accounts.

75. As a direct and proximate result of the actions of the defendants set forth above, plaintiff overpaid in interest.

76. As a direct and proximate result of the actions of the defendants set forth above, plaintiffs' credit and credit score have been severely damaged. Specifically, because of the derogatory credit reporting on her credit report by BofA and/or BAC, the plaintiff is unable to make use of her credit worthiness and to obtain any credit.

77. As a direct and proximate result of the actions of the defendants set forth above, the title to the plaintiffs' property has been slandered, clouded, and its sale ability has been rendered unmarketable.

78. As a direct and proximate result of the actions of the defendants set forth above, plaintiff does not know who the current beneficiary of her alleged Note and Mortgage actually is, such that she is now subject to "double financial jeopardy".

79. As a direct and proximate result of the actions of the defendants set forth above, *multiple* parties can attempt to enforce plaintiffs' alleged debt obligations.

80. The conduct of BofA and BAC and one or more of the Doe defendants has led to the imminent loss of plaintiffs' real property and pecuniary damages. The pecuniary damages include, but are not limited to, the cost of over calculation and overpayment of interest, the cost of repairing plaintiffs' credit, the reduction and/or elimination of plaintiffs' credit limits, the cost associated with removing the cloud from her property title and attorney's fees, in an amount to be proven at trial.

81.  The conduct of BofA and BAC, and one or more of the Doe defendants' conduct was malicious because defendants did not know the identity of the current and true beneficiary of plaintiff's Note and Deed of Trust, yet they intentionally and fraudulently covered up this defect by wrongfully recording a fraudulent Assignment, which would be enable them to ***illegally and fraudulently*** collect on plaintiff's debt, and which in essence has rendered the title the property unmarketable.

82.  The title to plaintiff's property has been rendered unmarketable and unsalable because of the possibility of multiple claims made against plaintiff's alleged debt obligation and the underlying security (the subject property).  If the Assignment of the Deed of Trust are not cancelled and set aside, plaintiff will be incurably prejudiced.  Plaintiff will be denied the opportunity to identify and negotiate with her ***true creditor*** and exercise her right to verify and validate her alleged debt.

83.  The plaintiff has offered to and is ready, willing, and able to unconditionally tender to her alleged obligation[16].

///

///

///

///

---

[16] Case law makes it clear that **Plaintiff is only required to allege a credible offer of tender,** not actually tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009) (...debtor must allege a credible tender of the amount of the secured debt..."). Moreover, tender is ***not*** required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic Registration Systems, Inc.* No. CV 11-1658 AHM, 2011 WL 25330299 (C.D. Cal June 24, 2011), at *16 (emphasis added)(citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424, (1997); Stockton v. Newman, 148 Cal. App. 2d 558, 564 (1957). *See also, Foulkord v. Wells Fargo Financial California Inc.,* No. CV 11-732-GHK (AJWx) (C.D. Cal May 31, 2011)("...requiring plaintiff to tender the amount due on her loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.") In light of the fact that Plaintiff contents the legitimacy of the Defendants' claim to the mortgage payments, it would be ***illogical and inequitable*** to require Plaintiff to actually tender the amount given that Plaintiff disputes whether Defendants have any rights under the loan. *See Onofrio v. Rice,* 55 Cal. App. 4th 413, 424 (1997).

## FIRST CAUSE OF ACTION - DECLARATORY RELIEF:
## TO DETERMINE STATUS OF DEFENDANTS'CLAIM
### [28 U.S.C. §§ 2201, 2202]
### [Against All Defendants and Doe Defendants]

84.  The plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

85.  Section 2201(a) of Title 28 of the United States Code states:

> In case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under of the Internal Revenue Codeof 1986, a proceeding under section 505 or 1146 of title11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether, or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

86.  Section 2202 of Title 28 of the United States Code states:

> Further necessary or proper relief based on declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

87.  Plaintiff alleges that BofA, BAC nor HSBC Bank USA N.A. have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignments have no value since the Deed of Trust is wholly unsecured.

88.  On or about May 03, 2007, the defendants claim they had secured enforceable interest in, and perfected lien against, the plaintiffs' Note, Deed of Trust and Property.

89. Thus, the competing allegations made by plaintiff above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

90. Accordingly, plaintiff requests that the Court make a finding and issue appropriate orders stating the none of the named defendants or Doe defendants, have any right or interest in plaintiff's Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect plaintiff's mortgage payments or enforce the terms of the alleged Note or Deed of Trust in any manner whatsoever.

91. The plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) plaintiff will be denied the opportunity to identify her true and current creditor/lender and to negotiate with them; (2) she will be denied the right to conduct discovery and have BofA and BAC and other defendants' claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) she will be denied the opportunity to discover the true amount she still owes minus any legal costs, fees and charges.

92. Due to the actual case and controversy regarding competing claims and the allegations, it is necessary that the court declare the actual rights and obligations of the parties and make a determination as to whether BofA and BAC and other defendants' claims against the plaintiff is enforceable and whether it is secured or unsecured by any right, title, or interest in plaintiffs' property.

93. Furthermore, the conduct of BofA and BAC, and Recontrust as their agent, and one or more of the Doe defendants, and each of them, as herein described, has been so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish defendants and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION - NEGLIGENCE

### [Against All Defendants and Doe Defendants]

94. The plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

95. At all times relevant herein, Bank of America was acting as a purported agent for BAC. Defendants are jointly and severally liable for BAC and/or Bank of America's negligent and reckless conduct.

96. BAC as the purported beneficiary of the Note and Deed of Trust, and Bank of America as purported mortgage servicer, all have a duty to exercise reasonable care[17] and skill to follow California Law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against plaintiff that they did not have the legal authority to do. This includes not collecting or demanding mortgage payments when they do not have the right to enforce the obligation, causing the plaintiff to overpay in interest, making derogatory credit reports to credit bureaus, and failing to keep an accurate accounting of plaintiffs mortgage payments, credits, and debits (if Bank of America is in fact the legally authorized mortgage servicer for the plaintiff).

97. BAC and Bank of America have a duty to exercise reasonable care and skill to refrain from taking any action against plaintiff that they do not have the legal authority to do. As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the defendants as set forth above, the chain of title to plaintiff's property has been rendered unmarketable and fatally defective and has caused plaintiff to lose saleable title to the subject property.

---

[17] Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991). However, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am*, 186 Cal. App.4th 727, 741 (2010). Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of the tort. *Id.* (citing *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144-45).

98. BAC and Bank of America breached that duty when they failed to follow the guidelines established in the PSA requiring the transfer of the Note and Deed of Trust into the "Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA4" by the closing date.

99. As a direct and proximate result of the negligence and carelessness of the defendants as set forth above, plaintiff suffered, and continues to suffer, general and special damages in an amount to be determined at trail, including attorneys' fees and costs of bringing suit to dispute, validate, and challenge said defendants' purported rights to enforce the plaintiffs' alleged debt obligation.

## THIRD CAUSE OF ACTION - QUASI CONTRACT

### [Against All Defendants and Doe Defendants]

100. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

101. Bank of America and/or BAC, demanded monthly mortgage payments from plaintiff and continued to collect payments from plaintiff. Plaintiff reasonably relied upon BAC and/or Bank of America's assertion that it/they are/were entitled to the benefit of plaintiff's mortgage payments.

102. Bank of America and/or BAC knowingly accepted payments and retained them for its own use knowing that Bank of America and/or BAC did not acquire an interest in plaintiff's Note, such that they could accept or keep plaintiff's payments. It would be inequitable for Bank of America and/or BAC to retain the payments it received from plaintiff which it did not have legal authority to collect. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

103. Section 23 of the Deed of Trust states that: "Upon payment of all the sums secured by this Security Instrument, Lender shall request Trustee to re-

convey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. "Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it." The obligations to Countrywide Bank, FSB under the Deed of Trust were fulfilled when Countrywide Bank, FSB received the balance on the Note as proceeds of sale of plaintiff's Note and Mortgage to a presently unknown entity. Bank of America has been unjustly enriched by collecting monthly payments from plaintiff when it has no interest in her Note.

104. Plaintiff seeks restitution for any payments he made to Bank of America and/or BAC that were not paid to the lender or beneficiary, if any.

## FOURTH CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 2605 (RESPA)

### [Against Bank of America and Doe Defendants]

105. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

106. The subject loan is a federally regulated mortgage loan and is subject to the federal Real Estate Procedures Act (RESPA) and its implementing regulation, Regulation X.

107. On or about August 2010, plaintiff sent a Qualified Written Requests to defendant Bank of America a ("QWR").

108. On information and belief Bank of America received QWR on or about August 2010.

109. The QWR contained information to enable Bank of America to identify plaintiff's loan and also contained requests for information of the loan, specifically the identity and contact information of the holder in due course of plaintiff's Note, accumulated late fees and charges, and requested information to verify the validity of the purported debt owed to Bank of America.

110. Bank of America did not provide the contact information for the purported holder of the plaintiffs' Note, as required by 12 U.S.C. § 2605, et seq. Instead, Bank of America responded by providing a partial account history of plaintiff's account. Bank of America's responses did not respond to plaintiff's request and did not comply with the requirements of 12 U.S.C. § 2605, et seq.

111. Because the Mortgage Loan is subject to RESPA and Regulation X, all defendants were required to comply with Section 6 of RESPA appearing at 12 U.S.C. § 2605., defendant violated Section 6 of Regulation X upon receipt of plaintiff's QWR by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction; and (b) failure to protect plaintiff's credit rating upon receipt of QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in § 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a).

112. Thus, Bank of America violated 12 U.S.C. § 2605 and its subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages. *See* 12 U.S.C. § 2605. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on plaintiff's loan, the costs of repairing plaintiff's credit, the reduction and/or elimination of plaintiff's credit limits, costs associated with removing the cloud on her property title and setting aside the trustee's sale, and attorneys' fees and costs, in an amount to be proven at trial, but in excess of $75,000.00.

113. As a direct and proximate result of the violations of RESPA and Regulation X by Bank of America, plaintiff has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

///
///

## FIFTH CAUSE OF ACTION – FOR VIOLATION OF
## 15 U.S.C. § 1692, ET SEQ.

### [Against All Defendants and Doe Defendants]

114. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

115. Federal law prohibits the use of any "any false, deceptive, or misleading representation or means in connection with the collection of any debt.........including the false representation of...the character, amount, or legal status of any debt...and the threat to take any action that cannot legally be taken..."

116. In illegally attempting to collect on plaintiff's debt obligation in the manner described herein, defendants BAC, as the purported assignee, and Bank of America, as purported mortgage servicer:

a) falsely represented the status of the debt, in particular, that it was due and owing to defendant BAC and/or Bank of America at the time the suit was filed;

b) falsely represented or implied that the debt was owing to defendant BAC and/or Bank of America as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

c) threatened to take action, namely engaging in collection activities that cannot legally be taken by them; and

d) attempted to collect on the promissory note under false pretenses; namely that BAC was assigned plaintiff's debt when in fact they were not.

117. Illegally collecting on alleged debts that were in default. "The Senate report emphasized the application of this section 15 U.S.C. § 1692(a) §§ 4.3.10 to mortgage service companies and others who service outstanding debts for others,

so long as the debts were not in default when taken for servicing. The defendants violated the statute by their alleged assignments being filed many months after the debt had been in default. The defendant's actions were illegal in their attempts to collect on the alleged debts as debt collectors claiming to be beneficiaries and creditors of the alleged debt. The defendants have misrepresented the "character, amount and the legal status of the alleged debt".

## SIXTH CAUSE OF ACTION – VIOLATION OF BUS. AND PROF. CODE SECTION 17200, ET SEQ.

### [Against All Defendants and Doe Defendants]

118. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

119. Defendants' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605(e), et seq.

120. Defendants' conduct, for the reasons stated herein, is in direct violation of Cal. Penal Code section 532(f)(a)(4).

121. Cal. Bus and Prof. Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair, or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

122. As more fully described above, defendants' acts and practices are unlawful, unfair, and fraudulent. This conduct is ongoing and continues to this date.

123. Defendants engage in unfair, unlawful[18], and fraudulent business practices with respect to mortgage loan servicing, and related matters by, among other things:

---

[18] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Sanders v. Superior Court*, 27 Cal. 4th 832(1994); *Hewlett v. Squaw Valley*, 54 Cal. 4th 499 (1997).

a) executing and recording false and misleading documents[19];

b) executing and recording documents without the legal authority to do so;

c) failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095;

d) demanding and accepting payments for debts that were non-existent;

e) violating the Security First Rule;

f) reporting payments as late to credit bureaus without the legal right or authority to do so;

g) acting as beneficiary without the legal authority to do so

h) other deceptive business practices as described herein.

124.  As more fully described above, defendants' acts and practices are likely to deceive members of the public.

125.  Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein; defendants violate several laws including Cal Bus. And Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

126. Plaintiff alleges that defendants' misconduct, as alleged herein, gave defendants an unfair competitive advantage over competitors. The scheme implemented by defendants is designed to defraud California consumers and enrich the defendants.

127.  The foregoing acts and practices have caused substantial harm to California consumers, including plaintiff.

128.  By reason of the foregoing, defendants have been unjustly enriched and should be required to make restitution to plaintiff and other California

---

[19]  Defendants' recording of the Assignment of Deed of Trust violates Cal. Penal Code section 532 (f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that defendants have committed mortgage fraud by filing the Assignment of Deed of Trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. and Prof. Code sections 17203 and 17204.

129. As a direct and proximate result of the actions of defendants, and each of them, stated above, plaintiff has been injured in that a cloud has been placed upon title to plaintiff's property and defendants have failed to remove this cloud from plaintiff's title.

130. Plaintiff is entitled to an order compelling Bank of America and/or BAC, and any other defendants claiming an interest in and to the property to take any and all actions necessary to remove the cloud they have placed upon her title and order enjoining such defendants from taking such actions again in the future.

## SEVENTH CAUSE OF ACTION - ACCOUNTING

### [Against All Defendants and Doe Defendants]

131. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

132. BAC and Bank of America as its purported agent; have held themselves out to be plaintiff's creditor and mortgage servicer. As a result of this purported relationship with plaintiff, said defendants have a fiduciary duty to plaintiff to properly account for payments made by plaintiff.[20]

133. As a result of the aforementioned fraudulent conduct, plaintiff paid Bank of America and BAC Home Loans Servicing LP, her mortgage payments for a period of approximately 3 and half years. However, for the reasons stated herein, none of this money was actually owed to Bank of America and BAC Home Loans Servicing LP. For that reason, these monies are due to be returned to plaintiff in full.

---

[20] To state a cause of action for accounting, a plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impracticable. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233. The elements for a claim for accounting are: 1) fiduciary relationship or other circumstances appropriate to the remedy; and 2) a balance due from the defendant to the plaintiff that can only be ascertained by an accounting. *See* Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.)

134.  The amount of the money due from defendants to plaintiff is unknown to plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions. Plaintiff is informed and believes and thereon alleges that the amount due to him exceeds $75,000.00.

**WHEREFORE, Plaintiff prays as follows:**

1.  For compensatory, special and general damages in an amount according to proof at trail, but not less than $8,250,000.00, against all defendants;

2.  For punitive and exemplary damages in an amount to be determined by the Court against all defendants;

3.  For an order compelling defendants to remove any instrument which does or could be construed as constituting a cloud upon plaintiff's title to the property, including the purported Assignment of Deed of Trust;

4.  For an order finding that defendants have no legally cognizable rights as to plaintiff, the property, plaintiff's Promissory Note, plaintiff's Deed of Trust or any other matter based on contract or any of the documents prepared by defendants, tendered to and executed by plaintiff;

5.  For the Court to issue an order restraining defendants, their agents or employees from continuing or initiating any action against the Property and enjoining defendants, their agents or employees from doing so during the pendency of this matter;

6.  For an order compelling defendants to disgorge all amounts wrongfully taken by them from plaintiff and returning the same to plaintiff's interest thereon at the statutory rate from the date the funds were first received from plaintiff;

7.  For costs of suit incurred herein;

8.  For reasonable attorneys' fees incurred; and

9.  For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

The plaintiff Kleopatra Makres; hereby requests a jury trial on all issues raised in this complaint under the Seventh Amendment to the U.S Constitution in accordance with "Federal Rule of Civil Procedure 38."

Dated: 9/10/2012

Kleopatra Makres,
Plaintiff in Pro Per
*Without Recourse*

## **LIST OF EXHIBITS**

Pursuant to *18 U.S.C. 1961(9),* Plaintiff now formally incorporates Her and Her *documentary material* by reference to all of the following Exhibits, as if set forth fully here, to wit:

Exhibit A - Assignment of Deed of Trust – 3 pages w/cover

Exhibit B - Termination of Trust: Form 15-15D - 4 pages w/cover

Exhibit C - Copy of Deed of Trust and Note - 29 pages w/cover

Exhibit D - Trust Prospectus: SEC Filing Form 424B5 - 7 pages w/cover

Exhibit E - MERS (Terms and Conditions) – 3 pages w/cover

Exhibit F – Copy of Notice of Default – 5 pages w/cover

Exhibit G – Copy of Debt Validation Letter – 3 pages w/cover

Exhibit H – Notice of Dispute: BofA – 11 pages w/cover

Exhibit H1 – Notice of Dispute: Recontrust - 11 pages w/cover

Exhibit H2 – Response Letter from BofA – 2 pages w/cover

Exhibit H3 – Response Letter from (Blank Rome LLP) – 41 pages w/cover

Exhibit I – Correspondence Letter from BofA – 2 pages w/cover

Exhibit J – Demand for Beneficiary Statement: BofA – 4 pages w/cover

Exhibit J1 – Demand for Beneficiary Statement: Recontrust – 4 pages w/cover

Exhibit J2 – Demand for Beneficiary Statement: MERS – 4 pages w/cover

Exhibit J3 – Demand for Beneficiary Statement: HSBC Bank – 4 pages w/cover

Exhibit K – Notice of Non-Compliance: MERS – 7 pages w/cover

Exhibit L – Notice of Non-Compliance: Recontrust – 7 pages w/cover

Exhibit M – Notice of Capacity: BofA – 4 pages w/cover

Exhibit M1 - Notice of Capacity: Recontrust – 4 pages w/cover

Exhibit M2 - Notice of Capacity: MERS – 4 pages w/cover

Exhibit M3 - Notice of Capacity: HSBC Bank – 4 pages w/cover

Total Exhibit pages attached – 165

## <u>VERIFICATION</u>

I, Kleopatra Makres, plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States" (Federal Government), that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

Dated: 9 10 2012

Kleopatra Makres,

CALIFORNIA NOTARY
ACKNOWLEDGEMENT ATTACHED
09/10/2012

# ACKNOWLEDGEMENT

State of California

County of ( _Orange_ )

On _09/10/2012_ before me _Hemanshu P. Badani, Notary Public,_

Personally appeared _KLEOPATRA MAKRES_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is / ~~are~~ subscribed to the within instrument and acknowledgement to me that he (she) they executed the same in her (her) / their authorized capacity (~~ies~~), and that by her /(her) / their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

HEMANSHU P. BADANI
COMM...1906980
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. October 7, 2014